Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 850
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| STARNET, LLC | § | Case No. 23-31943-11 |
| DEBTOR | § | |

**DISCLOSURE STATEMENT OF STARNET, LLC PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED DECEMBER 28, 2023**

**TO:    ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

**I**
**INTRODUCTION**

**Identity of the Debtors**

Starnet, LLC ( "Debtor") filed a voluntary Chapter 11 case in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division ("Court") on September 1, 2023. Debtor owns a piece of real estate in Cedar Hill, Texas. Debtor proposes to sell or refinance the property and repay its creditors.

**Purpose of Disclosure Statement; Source of Information**

Debtor submits this Disclosure Statement ("Disclosure Statement") pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors of Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan of Reorganization dated December 28, 2023 ("Plan"). This

Disclosure Statement describes the operations of the Debtor contemplated under the Plan. You are urged to study the Plan in full and to consult with your counsel about the Plan and its impact upon your legal rights. Any accounting information contained herein has been provided by the Debtor.

## Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor. Section 1125 of the Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure Statement is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

## Explanation of the Process of Confirmation

Even if all Classes of Claims accept the Plan, its confirmation may be refused by the Court. Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of Claimants. It generally requires that the value to be distributed to Claimants may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the Code.

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court. The plan, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

The Court may confirm the plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

Confirmation of the plan discharges the debtors from all of their pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

**Voting Procedures**

**Unimpaired Class**. Claimants in Classes 1 and 6 are not impaired under the Plan. Such Class is deemed to have accepted the Plan.

**Impaired Classes**. The Class 2 through 5 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2 through 5. Each holder of an Allowed Claim in Classes 2 through 5 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Eric A. Liepins, 12770 Coit Road, Suite 850, Dallas, Texas 75251. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

**Best Interests of Creditors Test**

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with at least as much as they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive less than is provided for in this Plan. Accordingly, since the Plan proposes a dividend to all creditors, such creditors are receiving at least as much as they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

**Cramdown**

The Court may confirm the Plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

**II**
**REPRESENTATIONS**

DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED DECEMBER 28, 2023- Page 3

[Note: Paragraphs in brackets to be included after the Bankruptcy Court approves this Disclosure Statement.]

[This Disclosure Statement is provided pursuant to Section 1125 of the Code to all of the Debtor's known Creditors and other parties in interest in connection with the solicitation of acceptance of its Plan of Reorganization, as amended or modified. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan. A copy of the Plan is attached hereto as Exhibit "A".]

[After a hearing on notice, the Court approved this Disclosure Statement as containing information of the kind and in sufficient detail adequate to enable a hypothetical, reasonable investor typical of the classes being solicited to make an informed judgment about the Plan.]

The information contained in this Disclosure Statement has been derived from the Debtors, unless specifically stated to be from other sources.

**NO REPRESENTATIONS CONCERNING DEBTOR ARE AUTHORIZED BY DEBTOR OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTORS WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, DEBTOR IS UNABLE TO WARRANT OR**

REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY
ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO
ENSURE THAT SUCH INFORMATION IS ACCURATE.  THE APPROVAL BY THE
COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN
ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY
OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN
OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE
IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED.
CONSEQUENTLY, DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION
CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE
TO BE ACCURATE.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE
STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS
SPECIFIED HEREIN.   THIS DISCLOSURE STATEMENT CONTAINS ONLY A
SUMMARY OF THE PLAN. THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE
STATEMENT IS AN INTEGRAL PART OF THIS DISCLOSURE
STATEMENT, AND EACH CREDITOR AND INTEREST HOLDER IS URGED TO
CAREFULLY REVIEW THE PLAN PRIOR TO VOTING ON IT.

### III

### FINANCIAL PICTURE OF THE DEBTORS

#### Financial History and Background of the Debtor

The Debtor is the owner of a residential property located at 2413 Brairwood Drive, Cedar
Hill, Texas. ("Property"). The Debtor constructed the Property with the plan on reselling the
Property.  The market for high end luxury homes has softened and the Debtor has been unable to
refinance or sell the Property. The Debtor's secured lender posted the Property to foreclosure which
prompted the filing.
The Debtor has currently listed the Property for sale. The Debtor believed that the real estate
market for this type of Property will increase in the first quarter of 2024 as a result of anticipated
decreasing interest rates.  The Debtor shall refinance of sell the Property as set forth in this Plan.

#### Post petition operations and Major Events

After the filing of this case, the Debtor entered into an Agreed Order with its secured lender
to allow the Debtor time to market the Property while paying the lender adequate protection
payments. The Debtor is current with those payments.

#### Future Income and Expenses Under the Plan

Under the Debtor's Plan, the Debtor receive funds in the amount necessary pay the creditor until the sale or refinancing Property. The funds necessary will come form the Debtor's principal Paul Faure.

## IV.
## ANALYSIS AND VALUATION OF PROPERTY

The Debtor owns the Property. the Debtor would show that the Property currently is worth more that the debts against the Property, hover, if the Property is foreclosed upon the Debtor does not believe there will be sufficient funds to pay all creditors of the estate.

## V.
## SUMMARY OF PLAN OF REORGANIZATION

The Reorganized Debtor will continue in business until the sale of the Property. The Plan will break the existing claims into 6 categories of Claimants. These claimants will receive cash payments on the Effective Date.

Satisfaction of Claims and Debts:  The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Articles V and VI of this Plan shall be the sole an exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests.  On the Confirmation Date, the Reorganized Debtors shall assume all duties, responsibilities and obligations for the implementation of this Plan.

**Class 1 Claimants (Allowed Administrative Claims of Professionals and US Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of Eric A. Liepins, P.C.  will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. Debtor believes the amount of this Class will not exceed $15,000. This case will not be closed until all allowed Administrative Claims are paid in full.  Section 1930 fees shall be paid in full prior to the Effective Date. Debtor will make quarterly payments to the U.S. Trustee and maybe required to file post-confirmation operating reports until this case is closed.

The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimants (Allowed Tax Creditor Claims)** are not impaired and shall be satisfied as follows:  The Dallas County has filed a Proof of Claim in the amount of $63,435.56. Any existing taxes will be paid at the time of the closing of the sale or refinance on the Property. In the event the sale or refinance does not close before the Effective Date, the Debtor shall pay the Class 2 creditor monthly payments on its Allowed Claim based upon a 54 month amortization with interest at the rate of 12 % per annum. These payments shall commence on the Effective Date and continue until the

sale, refinance or complete payment of the Class 2 creditor claim. The taxing authorities shall retain their liens on the Property until paid in full under this Plan.

The Class 2 Claimants are impaired under this Plan.

**Class 3 Claimants** (**Allowed  Claim of 1 Sharpe Opportunity Intermediate Trust**)  is impaired and shall be satisfied as follows: On or about June 8, 2021, Debtor executed that certain promissory note in the original principal amount of $822, 842.50 ("Note") in favor of Park Place Finance[1] ("Sharpe"). In order to secure the Note, Debtor executed that certain Construction Deed of Trust on June 8, 2021 on the real property commonly known as 2412 Brairwood, Cedar Hill, Texas ("Property") as more fully described therein. Sharpe has not filed a Proof of Claim in this case, however, upon information and believe the amount of the indebtedness to Sharpe is approximately $906,395.25.[2]  Any existing amount due the Class 3 creditor will be paid at the time of the closing of the sale or refinance on the Property. In the event the sale or refinance does not close before the Effective Date, the Debtor shall pay the Class 3 creditor  monthly payments on its Allowed Claim based upon a 240 month amortization with interest at the rate of 8 % per annum. These payments shall commence on the Effective Date and continue until the sale, refinance or complete payment of the Class 3 creditor claim. All liens of the Class 3 creditor shall remain in full force and effect until full payment of the Class 3 claim as set forth above.

The Class 3 creditor is not impaired under this Plan.

**Class 4 Claimant (Allowed Claim of Lotus Leaks & Restorations, LLC)** are impaired and shall be satisfied as follows. Lotus Leaks & Restorations, LLC ("Lotus") has not filed  Proof of Claim against the Debtor, however, Lotus Leaks as filed a Mechanic's Lien against the Property. In the event it is determined that Lotus has an allowed secured claim against the Debtor, the Lotus Class 4 creditor will be paid at the time of the closing of the sale or refinance on the Property. In the event the sale or refinance does not close before the Effective Date, the Debtor shall pay the Class 4 Allowed claim  monthly payments on its Allowed Claim based upon a 120 month amortization with interest at the rate of 8 % per annum. These payments shall commence on the later of the Effective Date or a final Order determining the amount of the Lotus Secured Claim,  and continue until the sale, refinance or complete payment of the Class 4 creditor claim. All liens of the Class 3 creditor shall remain in full force and effect until full payment of the Class 4 claim as set forth above.
 All creditors holding allowed unsecured claims will be paid from the funds provided at the closing. The unsecured creditors shall receive 100% of their allowed claims under this Plan.

---

[1]Upon information and belief Park Place Finance, LLC transferred its rights to the Note and related securing documents to 1 Sharpe Opportunity Intermediate  Trust.

[2]Debtor bases this amount on the Proof of Claim filed by Sharpe in Debtor's prior bankruptcy case 23-30210.

DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED DECEMBER 28, 2023- Page 7

The Class 4 Creditors are not  impaired under this Plan.

**Class 5 Claimants** (Current Ownership) is  impaired under the Plan and shall be satisfied as follows: All Allowed  General Unsecured Creditors shall receive their pro rata share of 60 monthly payments of $500 commencing 90 days after the Effective Date. All amounts due the Allowed Unsecured Creditor under this Plan shall be due and payable upon the Sale or refinancing on the Property.

The Class 5 Creditors are impaired under this Plan.

**Class 6 (Current Equity Owners)** are not impaired under the Plan and shall be satisfied as follows: The current equity owners shall retain his existing interests.

The Class 6 equity owner is not impaired under this Plan.

## ARTICLE VI
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor shall receive a cash infusion from its principal Paul Farve to pay the required payments under this Plan, until the Property has been Sold or refinanced.

As specified in Section 1125(e) of the Bankruptcy Code, persons that solicit acceptances or rejections of this Plan and/or that participate in the offer, issuance, sale or purchase of securities offered or sold under this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, are not liable on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejection of this Plan or the offer, issuance, sale or purchase of securities.

## ARTICLE VII.
## FEASIBILITY OF PLAN

The Plan is premised on the Debtor's ability to receive the funds from  the current owner until the sale or refinance of the Property

## ARTICLE VIII.
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction shall be retained under the Plan as set forth in Article XIV of the Plan.

This Plan shall be the sole and exclusive remedy for any Creditor of the Debtor dealt with herein, so long as Debtor is not in default under the Plan.

## ARTICLE IX.
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. The Debtor does not believe a liquidation of the Property would provide the creditors with a greater return than is being paid under the Plan.

## ARTICLE X
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan.  The Plan contemplates that there will be excess funds to pay Creditor Claims from the infusion of funds from  Commercial Realty, LLC, Brian Glaser or their assigns. The major risk associated with the Plan, is  Commercial Realty, LLC, Brian Glaser or their assigns  providing the funds as required under this Plan.

## ARTICLE XI.
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor.  Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.
Under the terms of this Plan, the creditor's should not suffer any negative tax consequences as a result of the Plan because all creditors will be paid in full the amounts owed to them.

## ARTICLE XII.
## PENDING OR ANTICIPATED LITIGATION

Debtor has  evaluated potential claims which may be brought pursuant to the Bankruptcy Code or other laws. The Debtor is not aware of any such claims that could be brought that would benefit the estate at this time.

Dated: December 28, 2023.

Respectfully submitted,

Starnet, LLC

By: Paul Faure
Its: Managing Member

Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 850
Dallas, Texas 75251
(972) 991-5591
(972) 991-5788 - telecopier

ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| STARNET LLC | § | Case No. 23-31943-11 |
| DEBTOR | § | |

**PLAN OF REORGANIZATION OF 3301 HO, LLC DATED DECEMBER 28, 2023**

**TO:   ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

COME NOW, Starnet LLC, Debtor and Debtor-in-Possession in the above-referenced bankruptcy case, and proposes the following Plan of Reorganization ("Plan"). The Plan proposes segregation of the Creditors and Equity Interest Holders of the Debtor into 6 separate classes.

## ARTICLE I

**DEFINITIONS**

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and in the accompanying Disclosure Statement, which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.    "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2.    "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither

the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final
Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed
with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to
amount, as to which no objection to the allowance thereof has been interposed through closing of
this case, or as to which any such objection has been determined by an order or judgment which is
no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari
proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of
the Code.  When "Allowed Claim" is used in the context of a Secured Claim, the provisions of
§506(b) of the Code shall also apply.

3.      **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security
interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest,
or other encumbrance has been properly perfected as required by law, to the extent of the value of
the property encumbered thereby.  That portion of such Claim exceeding the value of the security
held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C.
§506(a).

4.      **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for
which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the
Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor
nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the
Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court
pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to
which no objection to the allowance thereof has been interposed through closing of this case, or as
to which any such objection has been determined by an order or judgment which is no longer subject
to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This
category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5.      **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all
Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6.      **"Case"** shall mean this Chapter 11 case.

7.      **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of
the Order Confirming Plan whether or not such right is reduced to judgment, liquidated,
unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured
or unsecured or can be asserted by way of set-off.  Claim includes any right or cause of action based
on a pre-petition monetary or non-monetary default.

8.      **"Claimant"** shall mean the holder of a Claim.

9.      **"Class"** shall refer to a category of holders of Claims or interests which are
"substantially similar" as provided for in Section 1122 of the Code.

10.      **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United
States Code, as enacted in 1978 and thereafter amended.

11.     **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12.     **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13.     **"Court"** shall mean the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14.     **"Creditor"** shall mean any person having a Claim against Debtor.

15.     **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16.     **"Debtor"** shall mean Starnet, LLC.

17.     **"Disbursing Agent"** shall mean the Reorganized Debtor.

18.     **"Effective Date"** shall mean thirty days after the Final Confirmation Date.

19.     **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

20.     **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

21.     **"Final Confirmation"** shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22.     **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

23.     **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, September 1, 2023.

24.     **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25.     **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

26.     **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or

executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

27.      **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

28.      **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

29.      **"Substantial Consummation"** shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

30.      **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

31.      **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE 2
## CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to this Plan:

2.1      **Claims and Debts**: Various types of Claims and Debts are defined in this Plan.  This Plan is intended to deal with all Claims and Debts against the Debtor of whatever character whether or not contingent or liquidated and whether or not allowed by the Court pursuant to Section 502(a) of the Code and all Claims and Debts will receive the treatment afforded in Articles of this Plan. Claims and Debts incurred by the Debtor post-petition, including ad valorem taxes, in the ordinary course of business will be paid by the Debtor according to their terms as they come due.

2.2      **Securities Laws**:  The issuance of any security in satisfaction of indebtedness under this Plan may be exempt from registration under certain State and Federal securities laws by virtue of Section 1145 of the Code and the exemption therein contained.

2.3      **Time for Filing Claims**:  With respect to those Claims that have been identified in the Schedules filed pursuant to Section 521(1) of the Code and which have been scheduled as "disputed," "contingent," or "unliquidated," said Claimants <u>must</u> file a proof of claim bearing the case number of the above-styled and referenced proceeding with the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, on or before the Bar Date to participate under this Plan.  Claims scheduled as disputed, contingent, or unliquidated filed after the Bar Date shall not be allowed, and shall not participate in the distributions contemplated by this Plan.  Claims

arising from rejection of a lease or executory contract and administrative claims shall be filed with the Court within thirty (30) days following the Confirmation Date of this Plan.

2.4    **Modifications to Plan**:  In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified upon application of Debtor or corrected prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Code provided that, after hearing on and notice to the creditors, the Court finds that such modification does not materially or adversely affect any Creditor or Class of Creditor.

## ARTICLE 3
## TREATMENT OF UNCLASSIFIED CLAIMS
## (CERTAIN ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS)

3.1    All trade and service debts and obligations, including ad valorem taxes for year 2021, incurred in the normal course of business by the Debtor on or after the Petition Date will be paid when due in the ordinary course of the Debtor's business unless a different time for payment is specified in this Plan.

3.2    Each governmental unit holding a post-petition Claim arising out of taxes assessed against property of the estate, also including "ad valorem property taxes," but limited as provided by Section 502(b)(3) of the Code, shall be paid in full when said Claims are due.

## ARTICLE 4
## DIVISION OF CREDITORS INTO CLASSES

4.1    Classification of Claims:  This Classification of Claims is made for purposes of voting on this Plan, making distributions thereunder, and for ease of administration thereof.  Unless specifically provided otherwise herein, on the Confirmation Date this Plan discharges and extinguishes all Claims and Debts against the Debtor of whatever character, whether allowed by the Court or otherwise.

4.2    **Class 1**:    Consists of **Allowed Administrative Claims Attorney fees and US Trustee Fees** (Not Impaired)

**Class 2**:    Consists of **Allowed Ad Valorem Claims**  (Not Impaired)

**Class 3**:    Consists of **Allowed Claims  of 1 Sharpe Opportunity Intermediate Trust** (Impaired)

**Class4**:    Consists of **Allowed Claims of Lotus Leaks & Restoration, LLC** ("Impaired")

**Class 5**:    Consists of **Allowed Unsecured Claims** (Impaired)

**Class 6:**    Consists of  **Allowed Equity Holders** (Not Impaired)

## ARTICLE 5
## TREATMENT OF CLASSES

5.1    **Satisfaction of Claims and Debts**:  The treatment of and consideration to be

received by holders of Allowed Claims or interests pursuant to this Article of this Plan shall be in full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor subject to the provisions herein.  On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan.

5.2   **Class 1 Claimants (Allowed Administrative Claims of Professionals and US Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of  Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. This case will not be closed until all allowed Administrative Claims are paid in full.  Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $15,000 including Section 1930 fees.  Section 1930 fees shall be paid in full prior to the Effective Date.  The Debtor is required to continue to make quarterly payments to the U.S. Trustee and may be required to file post-confirmation operating reports until this case is closed.

The Class 1 Claimants are not impaired under this Plan.

5.3   **Class 2 Claimants (Allowed Tax Creditor Claims)** are not impaired and shall be satisfied as follows:  The Dallas County has filed a Proof of Claim in the amount of $63,435.56. Any existing taxes will be paid at the time of the closing of the sale or refinance on the Property. In the event the sale or refinance does not close before the Effective Date, the Debtor shall pay the Class 2 creditor  monthly payments on its Allowed Claim based upon a 54 month amortization with interest at the rate of 12 % per annum. These payments shall commence on the Effective Date and continue until the sale, refinance or complete payment of the Class 2 creditor claim. The taxing authorities shall retain their liens on the Property until paid in full under this Plan.

The Class 2 Claimants are impaired under this Plan.

5.4   **Class 3 Claimants (Allowed  Claim of 1 Sharpe Opportunity Intermediate Trust)**  is impaired and shall be satisfied as follows: On or about June 8, 2021, Debtor executed that certain promissory note in the original principal amount of $822, 842.50 ("Note") in favor of Park Place Finance[1] ("Sharpe"). In order to secure the Note, Debtor executed that certain Construction Deed of Trust on June 8, 2021 on the real property commonly known as 2412 Brairwood, Cedar Hill, Texas ("Property") as more fully described therein. Sharpe has not filed a Proof of Claim in this case, however, upon information and believe the amount of the indebtedness to Sharpe is approximately $906,395.25.[2]  Any existing amount due the Class 3 creditor will be paid at the time of the closing of the sale or refinance on the Property. In the event the sale or refinance

---

[1]Upon information and belief Park Place Finance, LLC transferred its rights to the Note and related securing documents to 1 Sharpe Opportunity Intermediate  Trust.

[2]Debtor bases this amount on the Proof of Claim filed by Sharpe in Debtor's prior bankruptcy case 23-30210.

does not close before the Effective Date, the Debtor shall pay the Class 3 creditor monthly payments on its Allowed Claim based upon a 240 month amortization with interest at the rate of 8 % per annum. These payments shall commence on the Effective Date and continue until the sale, refinance or complete payment of the Class 3 creditor claim. All liens of the Class 3 creditor shall remain in full force and effect until full payment of the Class 3 claim as set forth above.

The Class 3 creditor is not impaired under this Plan.

5.5     **Class 4 Claimant (Allowed Claim of Lotus Leaks & Restorations, LLC)** are impaired and shall be satisfied as follows. Lotus Leaks & Restorations, LLC ("Lotus") has not filed Proof of Claim against the Debtor, however, Lotus Leaks as filed a Mechanic's Lien against the Property. In the event it is determined that Lotus has an allowed secured claim against the Debtor, the Lotus Class 4 creditor will be paid at the time of the closing of the sale or refinance on the Property. In the event the sale or refinance does not close before the Effective Date, the Debtor shall pay the Class 4 Allowed claim   monthly payments on its Allowed Claim based upon a 120 month amortization with interest at the rate of 8 % per annum. These payments shall commence on the later of the Effective Date or a final Order determining the amount of the Lotus Secured Claim,  and continue until the sale, refinance or complete payment of the Class 4 creditor claim. All liens of the Class 3 creditor shall remain in full force and effect until full payment of the Class 4 claim as set forth above.
 All creditors holding allowed unsecured claims will be paid from the funds provided at the closing. The unsecured creditors shall receive 100% of their allowed claims under this Plan.

The Class 4 Creditors are not  impaired under this Plan.

5.6     **Class 5 Claimants** (Current Ownership) is  impaired under the Plan and shall be satisfied as follows: All Allowed  General Unsecured Creditors shall receive their pro rata share of 60 monthly payments of $500 commencing 90 days after the Effective Date. All amounts due the Allowed Unsecured Creditor under this Plan shall be due and payable upon the Sale or refinancing on the Property.

The Class 5 Creditors are impaired under this Plan.

5.7     **Class 6 (Current Equity Owners)** are not impaired under the Plan and shall be satisfied as follows: The current equity owners shall retain his existing interests.

The Class 6 equity owner is not impaired under this Plan.

## ARTICLE 6
## MEANS FOR EXECUTION OF THE PLAN

6.1     **Action to be taken:** Any actions required to be taken by the Debtor on the Effective Date may be taken by the Debtor before the Effective Date or immediately following the date of Final Confirmation.

6.2     **Ongoing Operations:** The Debtor's obligations under this Plan will be satisfied out of the sale or refinance of the Property and the payments by Debtor's principal.

6.3     Notwithstanding anything contained herein, the Reorganized Debtor shall have the right to request the Court to disallow any claim of any Entity from which property is recoverable under Sections 542, 543, 550, and 553 of title 11, or that is a transferee of a transfer avoidable under Sections 544, 545, 548, or 549 of title 11 unless such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable.

## ARTICLE 7
## SECTION 1129(b)(2)

7.1     The Court may confirm this Plan even though less than all of the Classes of Claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.  Accordingly, Debtor, as the plan proponent, requests the Court to determine that this Plan does not discriminate unfairly, and is fair and equitable with respect to the rejecting creditor.

## ARTICLE 8
## STATUS OF EXECUTORY CONTRACTS

8.1     All unexpired leases and executory contracts shall be assumed on or before the Effective Date.  To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan prior to the Effective Date, they are rejected.

## ARTICLE 9
## EVENTS OF DEFAULT AND EFFECT THEREOF

9.1     In the event that Substantial Consummation of this Plan does not occur on or before the earlier of the Effective Date or 71 days after the Confirmation Date, the Order of Confirmation may be vacated by any party in interest, other than the Debtor.

9.2     Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within thirty (30) days of receipt of written notice of such default to Reorganized Debtor

9.3.     Default shall occur if one scheduled Plan payment is not made by Debtor or if current

taxes are not timely paid pursuant to state law. In the event of default, any party in interest who has not received their required payment, shall send written notice of default as set forth in section 9.2 above. Any notice of default sent by ad valorem taxing authorities, under the Plan may be sent to PaulFaure at starnetdfw#gmailcom. In the event the default of payment to the ad valorem taxing authorities is not cured within twenty (20) days of the date of the facsimile, ad valorem taxing authorities may proceed to collect all amounts owed pursuant to state law outside of the Bankruptcy Court. The ad valorem taxing authorities shall not be required to give more than two notices of default. Upon the third event of default, the ad valorem taxing authorities shall be able to collect all amounts pursuant to state law outside of the Bankruptcy Court. Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any tax claims except for (i) resolving the amount of any such tax claim arising prior to confirmation, and (ii) enforcing the discharge provision of the Plan.

## ARTICLE 10
## DISCHARGE

10.1    Upon Confirmation, to the extent that a Claim or Debt has not been dealt with under this Plan, such Claim or Debt will be released.

10.2    The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE 11
## AMENDMENTS TO THE PLAN

11.1    Debtor may modify this Plan following Confirmation and before Substantial Consummation to the extent consistent with the requirements of section 1122 and 1123 of Title 11. The Plan as modified becomes the Plan if circumstances warrant modification and the Court approves of such modifications.

11.2    In the event of modification of this Plan pursuant to Section 11.1, any holder of a Claim or interest that has accepted or rejected this Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within ten (10) days of service of the Plan modifications upon such holder, such holder changes its previous acceptance or rejection.

## ARTICLE 12
## EFFECT OF CONFIRMATION

12.1    The provisions of this Plan bind Debtor, any Entity issuing securities under this Plan, any Entity acquiring property under this Plan, and any Creditor or Equity Interest Holder, whether or not the Claim or interest of such Creditor or Equity Interest Holder is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted this Plan.

12.2    All property of the estate shall vest in the Reorganized Debtor upon Final Confirmation.

12.3    All property of the Reorganized Debtor is free and clear of all Claims and interests of Creditors and Equity Interest Holders, except as to claims, secured claims or secured debentures and interests specifically granted in this Plan.

12.4    All Debts that arose before the Confirmation Date and any Debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Code, whether or not a proof of claim based on such Debt is filed or deemed filed under Section 501, whether or not such Claim is allowed under Section 502; and whether or not the holder of such Claim has accepted this Plan; are, fully and finally satisfied by this Plan.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

13.1    The obligations under this Plan to any particular Claim are governed by the laws of the State constituting the situs of the Debt represented by that particular Claim described in this Plan.

13.2    Equity Interest Holders are relieved from all liability, obligation or duty to initiate or pursue any causes of action of Debtor against any Entity.

13.3    Any caption herein is for convenience only and does not affect the construction of the Plan.

13.4    Any distribution pursuant to this Plan which remains unclaimed for a period of six (6) months from the due date of such distribution is forfeited.

## ARTICLE 14
## RETENTION OF JURISDICTION

Until this case is closed, the Court retains jurisdiction of the following matters only:

14.1    To direct any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a Transfer of property dealt with by the Plan and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan.

14.2    To allow or disallow Claims.

14.3    To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases which are included in Debtor's estate and to consummate rejection and termination thereof in connection with Debtor's estate and/or implementation of the Plan.

14.4    To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.

14.5    To adjudicate all Claims to an ownership interest in any property of Debtor's estate.

14.6    To recover all assets and properties, including by lawsuit, of Debtor's estate wherever located.

14.7    To hear and determine Claims concerning Federal, State and local taxes pursuant to Section 346, 505, 525 and 1146 of the Code.

14.8   To hear and determine any action or proceeding brought by Debtor or the Reorganized Debtor under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date.

14.9   To hear and determine any core proceeding, whether such proceeding is brought before or after the Effective Date.

14.10   To determine the validity, extent and priority of all Liens and security interests against property of Debtor's estate.

14.11   To consider any modification of this Plan under Section 1127 of the Code or under Bankruptcy Rule 3020 and/or modification of this Plan after Substantial Consummation as defined herein.

14.12   To hear and determine all requests for compensation and/or reimbursement of expenses of professionals.

14.13   To hear and determine Reorganized Debtor's requests for orders as are consistent with this Plan as may be necessary or desirable to carry out the provisions thereof.

14.14   To enter an order closing this case. The Debtor shall attempt to close the case within 6 months of the Effective Date.

Respectfully submitted,

Starnet, LLC

By: Paul Faure
Its: Managing Member

ERIC LIEPINS, P.C.
ERIC LIEPINS
12770 Coit Road
Suite 850
Dallas, Texas 75251
(972)991-5591
(972) 991-5788 - telecopier